**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | |
|---|---|
| IN RE: PROCTER & GAMBLE COMPANY "PROTECT, GROW, AND RESTORE" MARKETING AND SALES PRACTICES LITIGATION | Case No. 2:25-md-3157<br><br>Judge Douglas R. Cole<br><br>Magistrate Judge Kimberly A. Jolson |

**STIPULATED PROTOCOL AND ORDER REGARDING
ELECTRONICALLY STORED INFORMATION**

Plaintiffs Breanne Maggio, Kevin McCarthy, Melissa Lowry, Adam Alzaidi, Melissa Ceuvas, Pamela Giarrizzo, Carole Grant, Cynthia Meuse, LaTronya Williams, Lisa Kopecki, Michael Dunn, Patricia Dean, Catherine DuPont, Teretta Willis, Sharon Beck, Dawn van der Steeg, Kelley Rivers, Ernest Easter, Jubin Kwon, Angela Bryant, Gia Pascarelli, Shannon Weisman, Stuart Bergman, Brian Hymas, Trisha Nadeau, Leslie Sullivan, Robert Trepper, Eric Lemons, Sr., Rebekah, Klemm, and Natalia Stork("Plaintiffs"), by and through their counsel, and The Procter & Gamble Company ("P&G"), by and through its counsel, (collectively, the "Parties") hereby stipulate and agree to the following protocol to govern discovery of electronically stored information ("ESI") in this action. This protocol ("Protocol" or "ESI Protocol") will serve as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the discovery of ESI, and any other applicable orders and rules.

## I. PURPOSE

The ESI Protocol will govern the production of documents and ESI by the Parties in the above-captioned litigation and will serve as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

### A. Definitions

The following definitions and terms shall apply to this Protocol:

"Document" carries its broad meaning consistent with Fed. R. Civ. P. 34 and includes ESI and hard copy/paper material. A draft or non-identical copy is a separate Document within the meaning of this term.

"ESI" means electronically stored information, and carries a broad meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

"Extracted Text" means the text extracted from a Native File, and includes all header, footer, and document body information.

"Load File" means a load utilization file, which is an electronic file containing information identifying a set of paper-scanned images or processed ESI, and containing: (i) an indication of which individual pages or files constitute each Document, including attachments, and links to the Static Images associated with each Document; (ii) links to any Native Files, where native files are being produced, including attachments, associated with each Document; and (iii) data relevant to each individual Document, including extracted and user-created Metadata and coded data.

"Metadata" means: (i) information associated with or embedded in a Native File that does not constitute the primary content region of the file; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

"Native File" or "Native Format" refers to ESI that is produced in the format in which it was maintained (e.g., an Excel document produced in .xls format would be produced in native format).

"OCR" means the optical character recognition file that is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents text searchable using appropriate software.

"Producing Party" means the Party producing Documents in response to any request for production of documents pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

"Receiving Party" means the Party receiving a production of Documents in response to any request for production of document(s) pursuant to Fed. R. Civ. P. 34(a) or for any other reason.

"Static Image(s)" means a representation of ESI produced by converting a Native File into Tagged Image File Format (TIFF) capable of being viewed and printed on standard document review systems.

## II.     COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

### A.     Phasing

When a Party propounds discovery requests pursuant to Federal Rule of Civil Procedure 34, the Parties agree to make best efforts to phase ESI production where reasonably necessary, and they will meet and confer to discuss whether certain categories of information can be prioritized over other categories. Following the initial production, the Parties will continue to prioritize the order of Parties' document productions.

## III.    LIAISON

The Parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## IV.    PRESERVATION

The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs

and burdens of preservation and to ensure proper ESI is preserved, the Parties represent and/or agree that:

1.      The Parties represent that they have issued litigation hold notices to individuals whom they reasonably believe to possess relevant documents.

2.      The Parties represent that they have taken reasonable and proportionate steps to preserve potentially relevant documents in accordance with their obligations under federal law and the Federal Rules of Civil Procedure.

3.      The Parties will agree on the relevant period for which ESI will be preserved and searched.

4.      The Parties shall have a continuing obligation to identify sources of relevant documents and to take reasonable and proportionate steps to preserve them.

5.      Where disputes arise concerning the production of allegedly inaccessible ESI, the Parties shall follow Section 4 of Magistrate Judge Kimberly A. Jolson's Procedures ("Mandatory Telephonic Conference for Discovery Dispute").

## V.      SEARCH AND REVIEW

### A.      Collection

Each Party will be responsible for reviewing and producing its own documents. However, to facilitate a cooperative, efficient, and cost-effective discovery process, the Parties agree to meet and confer about ESI search terms and techniques to demonstrate an agreeable and efficient process.

### B.      Search Methodology

The Parties have started and will continue to meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not

subject to discovery. The Parties have also started and will also continue to meet and confer regarding custodians, search terms, and date restrictions. The Parties agree that review methods using Technology Assisted Review ("TAR") and/or AI assisted review may be used. Any use of TAR or AI in the review process will be governed by a separate protocol to be agreed upon by the Parties.

### C. File Types and Unsearchable ESI

File types containing text data, such as email stores and individual messages, word processing documents, spreadsheets, hypertext documents and data saved in portable document format ("PDF") with extractable text will be processed and their text shall be extracted prior to searching. Where available, image files and PDFs containing images of potentially relevant text shall be submitted to OCR processing before search terms are applied. ESI that has been identified as potentially responsive and for which searching is fundamentally ineffective, including certain images, audio files, or otherwise unsearchable ESI documents, must be reviewed without culling that relies primarily on text. However, if unsearchable ESI is part of a responsive, non-privileged family, then the unsearchable ESI does not need to be reviewed to the extent it is already included in the family-complete production.

### VI. PRODUCTION

#### A. Each Production Will Have Four Main Components

1. A directory titled "images" containing images of every page of document in the production in the production, Bates-numbered sequentially.

2. A directory titled "natives" containing native files for a subset of documents, each file named with the Bates number of the first page of the document it represents and a

confidentiality designation, and with the same extension as the original native file type of the document.

3. A directory titled "text" containing OCR or extracted text files, one file per document, each filed named with the Bates number of the first page of the document it represents with no additional text beyond this, followed by ".txt" suffix.

4. A directory titled "data" containing image and metadata load files that contain the Bates range and metadata for each document.

**B. Document Production Format for Documents Existing in Electronic Format**

Except as otherwise provided for in this Stipulation, all documents existing in electronic format shall be imaged and produced in TIFF format with corresponding text in accordance with the provisions contained herein. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties agree not to degrade the searchability of documents as part of the document production process. Notwithstanding the foregoing and any other provision in this Protocol, a Party may produce any or all documents in native format as they exist in the ordinary course of business.

**1. Metadata fields**

Load files should include, where applicable, the information listed in the Table of Metadata Fields, attached as Appendix 1. However, the Parties are not obligated to include metadata for any document that does not contain such metadata in the original if it is not possible to automate the creation of metadata when the document is collected, with the exception of the following: Begin Bates, End Bates, BegAttach, EndAttach, Pages, ProdVol, Custodian, All Custodians, File Extension, Redacted, and Confidentiality. If the producing Party is unable to produce metadata for

a particular field, it will provide an explanation of that inability with its document production. The metadata file shall be delimited according to the following characters:

Delimiter = ¶ (ASCII:020)

Text-Qualifier = þ (ASCII:254)

New Line = ® (ASCII:174)

Multi-value delimiter - ; (ASCII Code 059)

### 2. Load files

A delimited text file (.DAT) containing metadata described in Appendix 1 for each document and an image load file (.OPT) with information corresponding to each page of every produced document for images shall be provided. Do not include OCR or extracted text within a DAT file.

### 3. Images

Images must be produced as TIFF files. The document's original orientation shall be maintained (*i.e.,* portrait to portrait and landscape to landscape). Images may be produced in black & white, except that a Party shall produce color images where color is reasonably necessary to their comprehension or use. Each image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation.

All documents that contain comments, deletions, and revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes or other user-entered data that the source application can display to the user will be processed such that all that data is visible in the Image File to the extent reasonably feasible. To the extent a receiving Party believes the converted image distorts, omits, or causes information to be improperly

displayed, the receiving party may request the document in native format and the producing Party shall meet and confer to resolve the problem(s).

### 4.      Native files

Any native files (for example, Excel and Numbers files) produced shall have a Bates-numbered slip sheet stating the documents have been produced in native format. The producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder. Native files shall be produced with the extracted text and applicable metadata fields. All documents produced in native format shall include the relative file paths of the native files in the document production in the "NativePath" metadata field.

1.      Spreadsheets (e.g. Excel, Google Sheets and Numbers) will be produced in native format.

2.      Presentations (e.g., PowerPoint and Keynote) will be produced in native format. Redacted presentations may be produced in image format.

3.      Audio and video files will be produced in native format. The Parties will make best efforts to ensure care is taken for collection and production of any responsive video and/or video data, and to preserve any Metadata that may be associated with those items.

4.      Delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) will be produced in native format.

5.      For any other types of documents, the Parties will meet and confer to discuss requests for the production of files in native format, on a case-by-case basis. Notwithstanding any production permitted under this order in non-native format, where the production of the native file is reasonably necessary to the document's comprehension or use, a request for the native file shall not unreasonably be denied.

6. If the Parties are unable to reach agreement with regard to requests for additional documents in native-file format, the Parties reserve the right to seek relief from the Court.

**5. Text files**

A single multi-page text file shall be provided for each document, and the filename should match the beginning Bates number of the document. Text must be extracted directly from the native electronic file of ESI unless the document requires redaction, is a scanned hardcopy document, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.,* non-searchable PDFs), in which case searchable text shall be created using OCR. Text files shall not contain the Bates number or Confidentiality Designation. A commercially acceptable technology for OCR shall be used.

**6. Custodian or originating source**

The custodian or originating source shall be identified in the "Custodian" field of the database load files. If there is more than one custodian, all sources shall likewise be identified in the "All Custodians" field. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) shall be produced in such a fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.,* office, file room, archive, network storage, file share, back up, hard drive, etc.) shall be produced in such a fashion as to identify the department, group, entity, or facility. A producing Party shall use a uniform description of a particular custodian across productions.

**7. Dates**

All documents shall be processed so as to show the data and time in Coordinated Universal Time ("UTC"). Dates and times must be concatenated into a single field, with a format of

-9-

MM/DD/YYYY HH:MM:SS, and must be consistent within any one field. Date delimiters, such as slashes and colons, must be consistent across all fields.

### 8. De-duplication

To the extent exact duplicate documents reside within a Party's ESI data set (and is not an attachment to an email), the Party may produce only a single, de-duplicated copy of a responsive document. "Exact duplicate" shall mean documents with the same content hash values or determined to be exact duplicates by another reliable method. In situations where the Parties are not able to implement exact deduplication due to the nature of email repositories, the Parties will meet and confirm regarding a custom deduplication methodology.

1. A Producing Party shall de-duplicate documents across designated custodians and populate a field of data that identifies each designated custodian who had a copy of the produced document (the "Custodian" field), and deduplicated file paths should populate the All Paths field. Such de-duplicated documents shall be deemed produced from the custodial files of each such identified custodian for all purposes in this litigation, including for use at deposition and trial. A producing Party shall use a uniform description of a particular custodian across productions.

2. No Party shall identify and/or eliminate duplicates by manual review unless it is a manual review of hardcopy documents.

3. Hard-Copy Documents shall not be eliminated as duplicates of ESI.

4. If a newly identified custodian has been added following an initial production of documents, and that custodian is included on documents already produced, the producing Party also shall provide an overlay file to allow the receiving Party to update the

-10-

"Custodian" field. The overlay file shall include all custodians listed in the "Custodian" field in prior productions and any custodians newly identified in the current supplemental production.

### 9. Embedded and linked objects

Where reasonably feasible, non-image files embedded and/or linked within other documents will be extracted as separate documents and treated like attachments to the document in which they were embedded. Image files embedded within documents, such as signature blocks, need not be extracted as separate documents.

### 10. Password protected files

The producing Party shall produce passwords for any password protected files to the extent the passwords are reasonably available or remove passwords and encryptions from files prior to production.

### 11. Illegible or problem documents

Documents that cannot be read because of imaging or formatting problems, or because they are password-protected, shall be promptly identified by the Receiving Party. The Producing Party and the Receiving Party shall meet and confer to attempt to resolve the problem(s).

### 12. Compressed files

Compression file types (e.g., .CAB, .GZ, .RAR, .TAR, .Z., .ZIP, etc.) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files. The container file itself shall not be produced.

### 13. Redactions

The Parties may redact information that is (1) privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity, or (2) protected personal

information. For avoidance of doubt, the Parties may not redact information that a Party deems non-responsive or irrelevant. If a file that originates in ESI needs to be redacted before production, the file will be rendered in TIFF files, and the TIFF files will be redacted and produced. The producing Party will provide searchable OCR text for those portions of the document that have not been redacted, including all hidden content. If documents are produced with redactions, an electronic copy of the original, unredacted document shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such document including any metadata therein.

### 14. Bates numbering

The Begin Bates and End Bates fields should be populated for all documents sequentially within a given document, between documents, and across the production sets. These fields should not be blank under any circumstance.

The producing Party will brand all TIFF files in the lower right-hand corner with their corresponding Bates numbers, using a consistent font type and size. The producing Party will brand all TIFF files in the lower left-hand corner with the appropriate confidentiality designations in accordance with the Protective Order in this matter. Each responsive document produced in native format shall have its Bates number and confidentiality designation identified in the filename of the native file.

### 15. Production media

The producing Party shall provide the production data via SFTP, CDs, DVDs, or external hard drives, or by way of other electronic transfer, as between accounts at a cloud provider (subject to prior agreement with the requesting Party), as appropriate. For any production exceeding one (1) terabyte in size, the producing Party shall reasonably confer with the requesting Party about

the means of transmittal or production before undertaking it. The producing Party shall encrypt the production data, and the producing Party shall forward the password to decrypt the production data separately from the CD, DVD, external drive or SFTP to which the production data is saved. Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"). Each piece of Production Media shall also identify: (1) the producing Party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media.

### 16. Exception Files

Files that cannot be produced or imaged due to technical difficulties shall be identified as exception files. Common exception files include, without limitation, corruption, password protection, digital rights management, or proprietary software associated to the file. The parties will address on a case-by-case basis any exception files that appear to be significant to this litigation.

### C. Document Production Format For Documents Existing in Hardcopy

All documents that are hardcopy or paper files shall be scanned and produced as TIFF files with the OCR-acquired text files, with a unique Bates number per page, consistent with the load file and Bates numbering requirements above. When subjecting physical documents to an OCR process, the settings of the OCR software shall maximize text quality over process speed. Any settings such as "auto-skewing" or "auto-rotation" should be turned on when documents are run through the process. If a hardcopy or paper file has any notes affixed to them, the file should be scanned and produced with the notes as well as without the notes, and will be treated as the same document. A Party shall treat documents that are stapled or clipped together, or that otherwise

clearly appear to be a single document, as a single document. Otherwise, a Party shall treat hardcopy documents as distinct documents.

### D.     Family Groups

A "family" refers to an email with its attachments, an email containing a "hyperlink" to a document stored in a Party's cloud-based platform (*e.g.,* Google Drive, Microsoft One Drive), or a document that has embedded material that is "attached" to the document after processing and extracting all the materials. Parent-child relationships (the association between a document and its attachments) will be preserved through the production of an appropriate metadata field. If any member of a family group is determined to be responsive to a Party's document requests, then all members of that group must also be considered subject to production.

### E.     Email Threads

Email threads are email communications that contain prior or lesser-inclusive email communications that also may exist separately in a Party's electronic files. A most-inclusive email thread is one that contains all of the prior or lesser-inclusive emails, including attachments, for that branch of the email thread.

A producing Party need not review or produce non-inclusive emails, which is an email whose text and attachments are fully contained in another email that is being reviewed for responsiveness. However, an email that includes an attachment or content in the BCC or other blind copy field shall not be treated as a lesser-included version of an email that does not include the attachment or content, even if all remaining content in the email is identical, and shall be produced.

To the extent that a Producing Party uses email thread suppression to exclude email from review, the Producing Party shall still produce all responsive emails, including any responsive

-14-

lesser-inclusive emails and their metadata. Responsive lesser-inclusive emails shall be produced to the point in the email thread at which attorney-client privilege or work product protections are being asserted.

### F. Instant Messages and Social Media

For instant messages (e.g., Slack, Jabber, Google Chat), text messages (e.g., SMS, iMessage), or social media posts and messages (e.g., Facebook, Twitter/X.com, LinkedIn) that are produced for any custodian, a Party shall take reasonable steps to produce such messages or social media posts in a manner that preserves the context of the communication by producing messages and/or posts occurring before or after a given message and/or post pertaining to the same topic.

### G. Hyperlinked Files

The Parties will continue to meet and confer regarding scope and burden of the production of hyperlinked files and their production will be governed by a separate protocol to be agreed upon by the Parties.

### H. Production of Databases and Other Structured Data

If a database or other source of structured data contains responsive information, without waiving any such objection to such a request, the Parties shall meet and confer to determine whether such data can be produced in existing report formats and without undue burden. To the extent there are database sources for which production or data extraction would be unduly burdensome and/or the extracted format is not usable, the Parties will meet and confer to determine whether there is a reasonable form of production based on the specific circumstances. If one or more other formats of ESI come to light that due to their complex nature may not be appropriate for production as images or as Native files, the Parties will meet and confer in good faith to discuss a mutually agreeable production format or formats. Nothing in this paragraph prevents any party

from asserting any objection(s) to a request for data or information from database sources or media files including, but not limited to, undue burden, relevance, proportionality, scope, and/or the imposition of costs on the other party.

### I. Production of Audio and Video Recordings

If audio and/or video recordings are responsive, they should typically be produced in native format; however, if that format is inappropriate, the Parties shall meet and confer to determine a mutually agreeable format for producing the audio and/or video recording.

### J. Requests for Hi-Resolution or Color Documents

The Parties agree to respond to reasonable and specific requests for the production of higher resolution images if necessary. The Producing Party shall have the option of responding by producing color JPGs, PDF images, or native-file versions of the documents. All documents that contain color where the color is material to understanding the document shall be produced in color in the first instance. If a dispute arises with regard to requests for higher resolution or color images, the Parties will meet and confer in good faith to try to resolve it.

### K. Foreign Language Documents

All documents shall be produced in their original language. Foreign language text files and metadata shall be delivered with the correct encoding to enable the preservation of the documents' original language. Where a requested document exists in a foreign language and the Producing Party also has an English-language version of that document that it prepared for non-litigation purposes prior to filing of the lawsuit, the producing Party shall produce both the original document and all English-language versions. Nothing in this agreement shall require a producing Party to prepare a translation, certified or otherwise, for foreign language documents that are produced in discovery.

**L. Re-productions**

Notwithstanding any provisions to the contrary, documents that are re-produced in whole or in part from the production files of another litigation, arbitration, government inquiry, or other matter may be produced in the same manner and form as originally produced in the other matter.

**M. Production of Transcripts**

If deposition or other transcripts are responsive, the parties shall meet and confer to determine a mutually agreeable format for producing the transcripts.

**N. Processing of Third-Party Documents**

A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

The Issuing Party may request that the non-party simultaneously produce documents to the Issuing Party and all other parties. If the non-party produces documents only to the Issuing Party, to the extent practical given the data volume, productions by a non-party shall be produced by the Issuing Party to all other parties within seven days.

If a non-party produces documents without Bates numbers, the Issuing Party shall process the non-party production and add Bates numbers before producing the documents to all other parties.

**O. Non-Waiver**

The Parties do not waive any objection to the relevance, production, discoverability, admissibility, or confidentiality of documents.

**P. Protective Order**

All productions are subject to the Protective Order entered by the Court in in this Action.

-17-

**Q.     Good Faith Resolution of Disputes**

The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with the ESI Protocol. If a Producing Party, notwithstanding its good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such party shall inform the requesting Party in writing (for the avoidance of doubt, an email to the requesting Party shall fulfill this requirement) by a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties pursuant to Section 4 of Magistrate Judge Kimberly A. Jolson's Procedures.

## VII.   ASSERTIONS OF PRIVILEGE

**A.     Production of Privileged Documents**

The production of a document subject to a claim of privilege, work-product protection, or any other protection from disclosure, whether inadvertent or otherwise, does not operate as and is not a waiver of privilege or protection from disclosure in this case or in any other federal or state proceeding.

**B.     Privilege Logs**

Privilege logs shall be provided in Excel format and contain the following information:

1.     A sequential number associated with each privilege log record.

2.     If applicable, the date the document was created, the date it was last modified, and the date it was sent.

3. To the extent reasonably available, the identity of all persons who sent, authored, signed, or otherwise prepared the documents and identification of which of them are attorneys.

4. To the extent reasonably available, the identity of all persons designated as addressees or copyees and identification of which of them are attorneys.

5. A description of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity.

6. The type or nature of the privilege asserted (*i.e.,* attorney-client privilege; work product doctrine).

The privilege log may be generated, in part, using available metadata. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing Party shall include the unaccounted for fields in the privilege log, to the extent such fields are ascertainable from the face of the document.

Documents shall be logged individually and shall not be logged on the family level.

Privileged communications that post-date the filing of the initial complaint on January 16, 2025, need not be placed on a privilege log. Work product created by or for counsel in this matter after January 16, 2025, need not be placed on a privilege log.

Privilege logs should be produced within thirty (30) days of the date of the withholding of such documents from production. All privilege logs will be provided with sufficient time to permit the receiving party to review the privilege logs, meet and confer with the producing party, and bring any motion regarding those privilege logs prior to the close of discovery. A final privilege log will be provided within thirty (30) days of the substantial completion of the production of

-19-

documents. Challenges to documents withheld for privilege may be made after this deadline notwithstanding that any deadline for Party document discovery has passed.

## VIII.  MODIFICATION

### A.  Modification by Agreement

Any practice or procedure set forth herein may be varied by agreement between the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of documents and ESI. Before seeking Court intervention, the parties shall meet and confer in good faith regarding any modification.

### B.  Modification by Court Order

Nothing in this Protocol waives the right of any party to petition the Court for an Order modifying the terms upon good cause shown, provided, however, that counsel for such Party must first meet and confer with the counsel for the opposing Party and the Parties shall use reasonable best efforts to negotiate an exception from or modification to this Protocol prior to seeking relief from the Court.

### C.  Prompt Notice of Feasibility Concerns

If any formatting requirements or other specifications agreed to in this Protocol are later determined by the producing party to be unduly burdensome, unreasonably costly, or not otherwise feasible, the parties will promptly meet and confer before presenting the issue to the Court.

**SO ORDERED.**

Date:  June 3, 2026                        /s/ Kimberly A. Jolson
                                           KIMBERLY A. JOLSON
                                           UNITED STATES MAGISTRATE JUDGE

-20-

AGREED TO:

/s/ Terence R. Coates
Terence R. Coates (0085579)
*Trial Counsel*
MARKOVITS, STOCK & DEMARCO, LLC
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 6651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com

Steve W. Berman (*pro hac vice*)
Catherine Y.N. Gannon (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Tel: (206) 623-7292
steve@hbsslaw.com
catherineg@hbsslaw.com

Rebecca A Peterson (*pro hac vice*)
Catherine A. Peterson
Krista K. Freier
HECHT PARTNERS LLP
1650 W 82nd Street, Suite 880
Bloomington, MN 55431
Tel: (612) 778-9595
Fax: (888) 421-4173
rpeterson@hechtpartners.com
cpeterson@hechtpartners.com
kfreier@hechtpartners.com

Kim E. Richman (*pro hac vice*)
RICHMAN LAW & POLICY
1 Bridge Street, Suite 83
Irvington, NY  10533
Tel: (212) 687-8291
krichman@richmanlawpolicy.com

*Attorneys for Plaintiffs*

/s/ Elizabeth P. Kessler
*(per email authority)*
Elizabeth P. Kessler (0061730)
*Trial Counsel*
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
Phone: (614) 281-3852
Email: ekessler@jonesday.com

David J. Lender (*pro hac vice*)
Aaron J. Curtis (*pro hac vice*)
Elaina K. Aquila (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Phone: (212) 310-8000
Email: david.lender@weil.com
aaron.curtis@weil.com
elaina.aquila@weil.com

David R. Singh (*pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Phone: (650) 802-3000
Email: david.singh@weil.com

*Attorneys for Defendant*

**Appendix 1**
**ESI Metadata and Coding Fields**

A.    For scanned hard copy documents, the producing Party will provide the Metadata fields below.

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BeginFamily | Begin Bates number of first page of the parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| Pages | Total number of pages in the Document. |
| TextPath | Link to text file for the document. |
| Placeholder | Identifies a Document has a placeholder image. |
| File Extension | The extension of the file. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians of the document. |
| Confidentiality | Confidentiality designation. |
| Redacted | (Y/N) field that identifies whether the document is redacted. |
| ProdVol | Production volume number (*e.g.*, VOL001, VOL002, etc.). |
| Producing Party | Name of party producing the Document. |

B.    For ESI and documents that were originally stored in electronic format, all fields below should be provided, to the extent reasonably feasible. Unless otherwise agreed by the Parties, the field-naming conventions shall be as stated below, and shall be consistently applied across all productions:

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| Begin Bates | The production Bates number associated with the first page of a Document. |
| End Bates | The production Bates number associated with the last page of a Document. |
| BegAttach | Beginning Bates number of the attached documents |
| EndAttach | Ending Bates number of the attached documents |
| BeginFamily | Begin Bates number of the first page of parent Document of family of attachments. |
| EndFamily | End Bates number of the last page of last attachment to a family of Documents. |
| AttachCount | Number of document attachments. |

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| AttachNames | Native file names of each individual attachment, separated by semicolons. |
| Custodian | Identification of the custodian(s) from whom the file was sourced. |
| All Custodians | Identification of all custodians who the producing party agreed to produce and where a duplicate of the Document was de-duplicated when processing the documents. |
| File Path | The file path from which the document was collected |
| All Paths | Identification of all file paths for duplicate copies. |
| Author | Author field extracted from the Metadata of a Document or other creator identified for the Document. |
| From | From field extracted from the Metadata of an email message. |
| To | To field extracted from the Metadata of an email message. |
| Cc | Cc field extracted from the Metadata of an email message. |
| Bcc | Bcc field extracted from the Metadata of an email message. |
| Pages | Total number of pages in the Document. |
| Date Received | Datetime received (MM/DD/YYYY HH/MM/SS). |
| Date Sent | Datetime sent (MM/DD/YYYY HH/MM/SS). |
| Date Created | Datetime created (MM/DD/YYYY HH/MM/SS). |
| Date Modified | Datetime that a Document was last modified (MM/DD/YYYY HH/MM/SS). |
| Last Modified By | Identification of person(s) who last modified a Document. |
| Message Id | Unique Message Id. |
| In Reply To | Message ID of email that instant email is in reply to. |
| Subject | Subject line extracted from an email, e-document or e-attachment. |
| Filename | The full name of the Native File. |
| File Extension | The extension of the file. |
| File Size | The size of the file in bytes. |
| MD5 Hash | The MD5 hash value of a Document. |
| SHA1 Hash | The SHA1 hash value of a Document. |
| Application | Name of the application used to open the file. |
| NativePath | The relative path to the native file for this Document. |
| TextPath | The relative path to the text file for this Document. |
| Redacted | Whether a Document has redactions (Y/N). |
| Placeholder | Whether a Document has a placeholder image (Y/N). |
| Confidentiality | Level of Confidentiality assigned. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (i.e. hidden rows, columns, sheets, or slides). |
| Speaker Notes | Document has speaker notes (Y/N). |
| Has Comments | Indicates there are comments in the document. |

-23-

-24-

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| ProdVol | Production volume number (e.g., V001, V002, etc.). |
| Producing Party | Name of party producing the Document. |